**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JOHN HEADLEY,
  An individual,

        Plaintiff,

v.

Vi at HIGHLANDS RANCH,
  A trade name entity conducting business in Colorado.

Vi,
  An Illinois business entity.


CC-DENVER, INC.,
A Delaware corporation,

        Defendants.

---

**COMPLAINT AND REQUEST FOR JURY TRIAL**

---

Plaintiff John Headley, through his attorneys, Steven L. Murray, Murray Law LLC, submits his Complaint and Request for Jury Trial against Defendants, Vi at Highlands Ranch, CC-Denver, Inc., and Vi,[1] and states:

---

[1] Vi [vee] is a/k/a Vi Living, a/k/a Vi Senior Living.

1

## I.  <u>NATURE OF THE CASE</u>

This action is a housing discrimination case arising from Defendant Vi at Highlands Ranch's discriminatory treatment of Dr. John Headley, M.D.

Vi is a national provider of luxury senior housing, operating ten facilities in the United States, one of which is Vi at Highlands Ranch in Highlands Ranch, Colorado.

Vi at Highlands Ranch [Highlands] is a high-end senior living center.

Highlands refused to rent a housing unit to Dr. Headley, despite his ability to live independently and meet all requirements to rent the unit.

Highlands relied on an unlawful, false stereotype to deny Dr. Headley housing. Highlands concluded he could not live independently because he takes a specific prescription medication.

Highlands' conclusion was made contrary to undisputed facts: (1) Dr. Headley lives independently, (2) Dr. Headley takes the medication in issue on an elective basis, (3) the medication does not equate to Dr. Headley having Alzheimer disease or any drug condition precluding him from living independently, (4) Dr. Headley's physician supports the conclusions Dr. Headley can live independently and has no medical condition prohibiting him from living independently, and (5) Highlands denied Dr. Headley housing without reviewing or considering his physician's input or opinion.

Highlands unlawfully discriminated against Dr. Headley based on disability in violation of the Fair Housing Act [FHA], as amended,  42 U.S.C. § 3601, et seq.

## II. <u>PARTIES</u>

1. Dr. Headley is a resident of Denver, Colorado.

2. Vi at Highlands Ranch: (1) conducts business at 2850 Classic Drive, Highlands Ranch, Colorado 80126, and (2) is a Colorado-registered trade name of CC-Denver, Inc.

3. CC-Denver, Inc. is a Delaware corporation operating from the following corporate address: 233 Wacker Drive, Suite 8400, Chicago, Illinois, 60606.

4. CC-Denver is registered to conduct business in Colorado with a registered agent, Corporation Service Company, at 1900 W. Littleton Blvd., Littleton, Colorado 81020.

5. CC-Denver, Inc.'s corporate address is the same as Vi's corporate address, 233 Wacker Drive, Suite 8400, Chicago, Illinois 60606.

6. Vi, a national provider of luxury senior living communities, operates Vi at Highlands Ranch.[2]

7. Vi conducts business from the same corporate address as CC-Denver, Inc., 233 Wacker Drive, Suite 8400, Chicago, Illinois 60606.

## III. <u>JURISDICTION AND VENUE</u>

8. Jurisdiction is proper under 28 U.S.C. § 1331.

9. Jurisdiction is proper under the FHA.

---

[2] Vi at Highlands Ranch, Vi a/k/a Vi Living a/k/a Vi Senior Living, and CC-Denver, Inc. are collectively referenced herein as Highlands.

10. Dr. Headley is an aggrieved person under the FHA. 42 U.S.C. § 3602(i)(1).

11. Dr. Headley, as an aggrieved person under the FHA, may file this civil action under the Act, 42 U.S.C. § 3613(a)(1)(A), which authorizes aggrieved persons to bring civil actions in the United States District Court for violations of discriminatory housing practices under the FHA.

12. Vi at Highlands Ranch, Vi Senior Living, and CC-Denver, Inc. are entities: (1) covered by the FHA, (2) proper parties to this civil action, and (3) conducting business in the Judicial District of this Court.

13. This action is authorized and instituted under the FHA.

14. Headley's claims assert violations of the FHA and seek remedies under the Act.

15. Venue is proper in this Court under 28 U.S.C. § 1391(a)(1), (b)(1)(2), (c)(1)(2).

16. Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## IV.  GENERAL ALLEGATIONS

### A.  Overview

17. Dr. Headley, a male, is seventy-four years of age.

18. Dr. Headley is a retired, accomplished physician.

19. In 2022, Dr. Headley's wife passed away. In the Spring of 2023, he moved to the Denver area, which allowed him to be near his son and his family.

20. Between February and April 2025, Dr. Headley applied to rent a housing unit at Highlands.

21.  On March 17, 2025, Highlands denied Dr. Headley's application and confirmed the denial on March 18, 2025.

22.  Andrew Headley is Dr. Headley's son [Andrew].

23.  Andrews was involved in the application process and the events in issue. [Andrew].

**B.  Application**

24.  On February 24, 2025, Dr. Headley and Andrew toured Highlands with Jessica Hawley, Director of Sales.

25.  The next day, Dr. Headley gave Highlands a $1000.00 deposit to be placed on a waiting list for a one-bedroom unit.

26.  On March 3, 2025, Gail White, a Sales Counselor with Highlands, told Dr. Headley and Andrew a unit was available.

27.  Dr. Headley made a second deposit of $1500.00 to move forward with the unit-specific application.

28.  On March 4, 2025, Dr. Headley, after touring unit number 2809, moved forward with the application process.

29.  Dr. Headley signed a "Presentation of Fees" document and began compiling application materials.

30.  Dr. Headley completed the extensive application and submitted it to Highlands on March 7, 2025.

31.  On March 11, 2025, Dr. Headley wired $39,000.00 to Highlands as a 10% deposit for unit number 2809.

32.  Dr. Headley qualified for admission to Highlands.

### C. <u>Highlands Denies Dr. Headley's Application</u>

33.  On March 17, 2025, Highlands' Resident Committee denied Dr. Headley's application.

34.  Highlands informed Dr. Headley of the denial via a telephone call from Ms. White to Andrew.

35.  Ms. White told Andrew Highlands denied Dr. Headley's application because of one of his medications, Donepezil.

36.  In Dr. Headley's application to Highlands, he truthfully disclosed his prescription for this medication.

37.   Ms. White told Andrew that residents in the independent living facilities must be independent, and Highlands concluded Dr. Headley did not qualify to rent a unit at the facility.

38.  At the time of the above telephone call, and always before and continuing to the present, there is no evidence Dr. Headley cannot live independently.

39.  Donepezil is used to treat dementia of all kinds [memory loss and mental changes] associated with mild, moderate, or severe Alzheimer's disease and non-Alzheimer's cognitive decline.

40.  Donepezil can improve thinking ability in some patients. This medicine is available only with a doctor's prescription." [3]

---

[3] https://www.mayoclinic.org/drugs-supplements/donepezil-oral- route/description/drg-20063538.

41.  In Andrew's discussion with Ms. White, he explained: (1) Dr. Headley does not have Alzheimer's disease, (2) Dr. Headley's neurologist prescribed the drug to support his memory function, (3) the neurologist prescribed the medication as an elective measure, and (4) Dr. Headley and his doctor determined there were few if any drawbacks to using the prescribed medication.

42. Despite Highlands receiving the above information from Andrew, it did not seek further information from Dr. Headley's physician, who prescribed the medication, or any of his medical providers.

43. Upon information and belief, the Highlands staff members making the decisions on Dr. Headley's application and providing Dr. Headley and Andrew with Highlands' reasoning and decisions were not physicians.

44. In the initial March 17, 2025, telephone call, Highlands and Ms. White recommended Dr. Headley "look at other facilities," pushing him away from Highlands based on an unfounded stereotype.

45. Ms. White and Highland did not inform Dr. Headley and Andrew of the availability of the appeal process. They only informed Andrew of the process after he asked about the availability of an appeal.

46.  Andrew told Ms. White he would work with Dr. Headley's treating neurologist to understand (1) why Dr. Headley was prescribed Donepezil, and (2) the significance of the drug in Dr. Headley's treatment plan and his application to Highlands.

47.  On March 18, 2025, Ms. White called Andrew. She told him Highlands Resident Committee confirmed its denial of Dr. Headley's application.

7

48. Highlands denied Dr. Headley's application and confirmed its denial before it received:

(1)  Any objective evidence Dr. Headley could not live independently

(2)  Any information from Dr. Headley's physician to support Highland's conclusion he could not live independently.

(3)  Any of Dr. Headley's medical records about his medical condition, use of Donepezil, and his capacity to live independently.

(4)  Dr. Headley's appeal.

49. On March 19, 2025, Andrew told Highlands Dr. Headley had an appointment with his neurologist on March 26, 2025.

50. In response, Highlands asked for documentation from the neurologist. Highlands received these documents after March 19th.

51. On March 24, 2025, Ms. Hawley called Andrew. She told him: (1)  it may not be safe for Dr. Headley to stop taking Donepezil to accommodate Highlands' rule that he cannot take the medication and become a resident, and (2) Highlands needs to ensure there is a high likelihood of residents living in the independent living facility for at least two years.

52. Regarding Ms. Hawley and Highlands' two statements to Andrew on March 24, 2024:

(1)  The statements were made to push Dr. Headley away from Highlands based on an unfounded stereotype.

8

(2)  There is no evidence of any aspect of Dr. Headley's medical condition supporting Highlands' conclusion that there was not a high likelihood of Dr. Headley living in the independent living facility for at least two years.

(3)  Highlands did not tell Dr. Headley of any alleged rule about Donepezil.

(4) Highlands did not receive any medical input from Dr. Headley's neurologist or any of his medical providers.

(5) Highlands did not consider Dr. Headley's use of Donepezil to be elective.

(6) Highlands did not consider the reasons Dr. Headley was placed on Donepezil in the summer of 2023, or his progress, updates, and status since being placed on this medication.

53.  In Andrew's above discussion with Ms. Hawley, he: (1) again stressed Dr. Headley was independent, (2) Dr. Headley would confer with his doctor before taking any action about the medication, and (3) asked her why Highlands was so focused and demanding about Dr. Headley's use of the medication.

54.  Dr. Hamid Mortazavi has been Dr. Headley's neurologist since Dr. Headley moved to Denver in 2023. He is affiliated with Neurology of the Rockies, LLC.

55.  Dr. Headley met with Dr. Mortazavi on or about March 26, 2025.

56.  Dr. Mortazavi expressed support for Dr. Headley.

57.  Dr. Mortazavi expressed concern Highlands was using Dr. Headley's use of Donepezil as a reason not to rent him the housing unit. He prepared a document

stating:

> Dr. John Headley DOB: 10/17/1950 is being seen for a very mild form of neurodegenerative disease (mild dementia). Dr. Headley has been stable and doing well since 2023 and he may not need any additional medication. **This dementia diagnosis for Dr. Headley does not impact his ability to live independently and doesn't limit his life expectancy.** [emphasis supplied].

58.  Andrew gave Dr. Mortazavi's letter to Ms. Hawley, Ms. White, and Highlands on March 27, 2025.

59.  Highlands never provided Dr. Headley or Andrew (1) with any medical analysis to contradict the analysis and conclusions issued by Dr. Headley's physician, or (2) any medical opinion or findings supporting the reasons it refused to rent the housing unit to Dr. Headley.

60. On March 31, 2025, Andrew confirmed with Highlands its receipt of Dr. Mortazavi's letter and asked for updates for the appeal review.

61.  On April 9, 2025, Andrew asked for an update from Ms. White and Ms. Hawley.

62.  On the same day, April 9, 2025, Highlands denied Dr. Headley's appeal.

63.  Highlands' reasons for not renting housing to Dr. Headley, making the rental of the housing unit otherwise unavailable to him, and imposing discriminatory terms, conditions, and privileges in the rental of the unit, are unworthy of credence.

64. As a direct, foreseeable, and proximate result of Highlands's unlawful, intentional discrimination, Dr. Headley suffered compensatory damages and injuries, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

65. As a direct, foreseeable, and proximate result of Highlands's unlawful, intentional discrimination, Dr. Headley suffered economic damages and losses, including but not limited to loss of money to obtain alternative housing.

66. Highlands' unlawful housing practices were willful or done with malice or reckless indifference to Dr. Headley's rights under the laws of the United States to be free from disability discrimination in employment.

## V. CLAIMS FOR RELIEF

### A. Overview: Fair Housing Act.

67. The Fair Housing Act [FHA], 42 U.S.C. 3601 et seq., and its implementing regulations, 24 C.F.R. Part 100, prohibit discrimination by providers of housing.

68. Under 42 U.S.C. § 3604(f) of the FHA, it is unlawful:

(1) To discriminate in the rental, or to otherwise make unavailable or deny, a dwelling to any person because of the person's disability; or

(2) To discriminate against any person in the terms, conditions, or privileges of the renting of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the person's disability.

69. The FHA's prohibition of disability discrimination is specifically aimed at rejecting generalized and unfounded perceptions, stereotypes, and assumptions about disabilities

70. The FHA defines disability in three distinct provisions: an individual (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has "a record" of having such an impairment, or (3) is "regarded as" having such an

impairment. 42 U.S.C. § 3602(h)(1)(2)(3).

71.   Dr. Headley is disabled under the FHA and each of the three FHA definitions of disability in the above paragraph and the provision, 42 U.S.C. § 3602(h)(1)(2)(3).

72.   Dr. Headley is a member of the FHA's protected class because he has a disability.

73.   At all times, Highlands was aware of Dr. Headley's disability.

74.   Highlands's conduct and refusal to rent housing to Dr. Headley were not based on any individualized assessment or legitimate tenancy-related concern.

75.   Dr. Headley asserts six claims against Highlands under the FHA and its implementing regulations.

76.   Highlands discriminated against Dr. Headley in the denial of the rental unit in the Highlands.

## FIRST CLAIM

### [Discrimination in the Rental of a Unit:
### ["Regarded As" Disabled: Stereotype]

77.   Dr. Headley incorporates and reasserts all prior paragraphs of this Complaint.

78.   The FHA provides it is unlawful: To discriminate in the rental, or to otherwise make unavailable or deny a dwelling to any person because of the person's disability. 42 U.S.C. § 3604(f)(1).

79.   Dr. Headley is a qualified individual who was "regarded as" having a disability under the FHA. 42 U.S.C. § 3602(h)(3).

80. Highlands regarded Dr. Headley as having a physical or mental impairment which substantially limits one or more major life activities. 42 U.S.C. § 3602(h)(3).

81. Highlands knew or perceived Dr. Headley to be disabled based on his use of the medication and concluded he could not live independently and/or could not live in the independent living facility for at least two years.

82. Highlands refused to rent housing to Dr. Headley.

83. Highlands' refusal to rent housing to Dr. Headley was motivated by discriminatory, unfounded, and false stereotypes and assumptions about individuals taking certain medications and concluding such individuals could not live independently and/or could not live in the independent living facility for at least two years.

84. Highlands denied Dr. Headley's right to rent a unit under circumstances giving rise to an inference the denial was based on his disability.

85. Highlands's refusal to rent housing to Dr. Headley is unlawful discrimination under 42 U.S.C. § 3604(f)(1).

## SECOND CLAIM

**[Discrimination in the Rental of a Unit]**
**[Physical or Mental Impairment]**

86. Dr. Headley incorporates and reasserts all prior paragraphs of this Complaint.

87. Dr. Headley is a qualified individual with a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 3602(h)(1).

88. Dr. Headley has two disabilities: (1) mild dementia, and (2) permanent physical impairments from Guillain-Barré syndrome [GBS], a rare neurological disorder.

89. Dr. Headley's mild dementia is an impairment substantially limiting one or more of his major life activities, including but not limited to his memory function.

90. Dr. Headley's Guillain-Barré syndrome is an impairment substantially limiting one or more of his major life activities, including but not limited to his neurological function, respiratory, and immune system function.

91. Highlands refused to rent housing to Dr. Headley.

92. Highlands' refusal to rent housing to Dr. Headley was motivated by Dr. Headley's disability.

93. Highlands denied Dr. Headley's right to rent a unit under circumstances giving rise to an inference that the denial was based on his disability.

94. Highlands' refusal to rent housing to Dr. Headley is unlawful discrimination under 42 U.S.C. § 3604(f)(1).

## THIRD CLAIM

### [Discrimination in the Rental of a Unit]
### ["Record of Disability": Medical Conditions]

95. Dr. Headley incorporates and reasserts all prior paragraphs of this Complaint.

96. Dr. Headley is a member of the FHA's protected class; he has a disability.

97. Dr. Headley is a qualified individual with a record of a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 3602(h)(2).

14

98.  Highlands refused to rent housing to Dr. Headley.

99.  Highlands' refusal to rent housing to Dr. Headley was motivated by Dr. Headley's disability.

100.  Highlands denied Dr. Headley's right to rent a unit under circumstances giving rise to an inference the denial was based on his disability.

101.  Highlands's refusal to rent housing to Dr. Headley is unlawful discrimination under 42 U.S.C. § 3604(f)(1).

## FOURTH CLAIM

### [Discrimination in the Terms, Conditions, and Privileges of the Rental of a Unit]

102.  Dr. Headley incorporates and reasserts all prior paragraphs of this Complaint.

103.  The FHA provides it is unlawful: To discriminate against any person in the terms, conditions, or privileges of a rental, or in the provision of services or facilities in connection with the dwelling, or in the provision of services or facilities in connection with such dwelling, because of the person's disability. 42 U.S.C. § 3604(f)(2).

104.  Highlands refused to rent housing to Dr. Headley.

105.  Highlands imposed discriminatory terms and conditions on Dr. Headley, including but not limited to requiring him to stop taking the specific medication, have the capability of independent living, and/or the capability to live in the independent living facility for at least two years.

106.  Highlands' refusal to rent to Dr. Headley and its imposed discriminatory terms and conditions were based on discriminatory, unfounded stereotypes, and false

assumptions tied to Dr. Headley's mediation, his capacity to live independently, and/or his capability to live in the independent living facility for at least two years.

107.    Highlands' imposition of discriminatory terms, conditions, and privileges to the rental of the unit and refusal to rent housing to Dr. Headley were motivated by Dr. his disability.

108.    Highlands denied Dr. Headley's right to rent a unit under circumstances giving rise to an inference the denial was based on his disability.

109.    Highlands' refusal to rent housing to Dr. Headley is unlawful discrimination under 42 U.S.C. § 3604(f)(2).

## FIFTH CLAIM

### [Otherwise Make Unavailable or Deny, a Dwelling to a Renter]

110.    Dr. Headley incorporates and reasserts all prior paragraphs of this Complaint.

111.    The FHA not only prohibits the denial of the right to rent a facility based on one's disability, but it also provides more expansive protection by prohibiting a landlord's actions which "otherwise make unavailable or deny, a dwelling to any renter because of the disability of the renter." 42 U.S.C.§§ 3604(f)(1).

112.    The "otherwise make unavailable" language prohibits all forms of housing discrimination, sophisticated and simple-minded, including discriminatory policies, practices, rules, burdensome application procedures, tactics of delay, and discouragement.

113. Highlands engaged in a combination of cumulative, burdensome, unwarranted, and discriminatory actions, policies, practices, rules, and discouragement in acting to "otherwise make unavailable" to Dr. Headley the housing unit to rent.

114. Highlands' actions to "otherwise make unavailable" to Dr. Headley a housing unit to rent were motivated by Dr. Headley's disability.

115. Highlands denied Dr. Headley's right to rent a unit under circumstances giving rise to an inference that the denial was based on his disability.

116. Highlands' refusal to rent housing to Dr. Headley is unlawful discrimination under 42 U.S.C.§ 3604(f)(1).

## SIXTH CLAIM

### [Statements re: Preference, Limitation, or Discrimination]

117. Dr. Headley incorporates and reasserts all prior paragraphs of this Complaint.

118. The FHA prohibits the making of any statement regarding the rental of a dwelling that indicates any preference, limitation, or discrimination based on disability or an intention to make any such preference, limitation, or discrimination. 42 U.S.C.§ 3604(c).

119. A statement is prohibited if it suggests to an ordinary reader that a particular protected group is favored or disfavored.

120. A statement violates the FHA if the context suggests an impermissible preference.

121. This FHA prohibition extends to oral statements.

17

122.    Highlands made statements, including but not limited to: (1) the unfounded statements, conclusions, and findings above, (2) suggesting Dr. Headley stay on the drug in issue, which made Highlands' conclude he was ineligible to rent a unit because he could not live independently, and (3) telling Dr. Headley to look elsewhere to rent a home.

123.    Highlands' statements were made regarding the rental of a dwelling.

124.    Highlands' statements indicated a preference, limitation, or discrimination based on a disability.

125.    The FHA protects against the "psychic injury" caused by discriminatory statements made in connection with the housing market.

126.    Highlands refused to rent housing to Dr. Headley.

127.    Highlands' refusal to rent housing to Dr. Headley was motivated by Dr. Headley's disability.

128.    Highlands denied Dr. Headley's right to rent a unit under circumstances giving rise to an inference that the denial was based on his disability.

129.    Highlands' refusal to rent housing to Dr. Headley is unlawful discrimination under 42 U.S.C. § 3604(c).

## VI.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff Dr. John Headley respectfully requests this Court to enter judgment in his favor against Highlands on the claims asserted in this Complaint and Request for Jury Trial and award the following relief.

1.  To enter a judgment for Dr. Headley and against Highlands, finding Highlands's acts are continuing and intentional discrimination in violation of the FHA.

2. To award Dr. Headley against Highlands all economic, monetary damages to which he is entitled under the FHA.

3. To award Dr. Headley against Highlands all compensatory damages against Highlands for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future monetary losses, and all other compensatory damages to which he is entitled under the FHA.

4. To award Dr. Headley punitive damages against Highlands to which he is entitled under the FHA.

5. To award Dr. Headley immediate placement in the rental unit in issue at Highlands.

6. To award Dr. Headley attorney fees against Highlands under the FHA, and all laws to which he is entitled to receive attorney fees.

7. To award Dr. Headley costs against Highlands under the FHA, and all laws to which he is entitled to receive costs.

8. To award Dr. Headley against Highlands all pre-judgment and post-judgment interest at the proper rate given by law.

9. To direct Highlands to take such affirmative relief steps as are necessary to ensure the effects of Highlands' unlawful housing practices are eliminated.

10. To direct Highlands to take such affirmative relief steps as are necessary to ensure the effects of Highlands' unlawful housing practices do not continue to affect Dr. Headley's housing opportunities.

19

11. To award Dr. Headley all other legal and equitable relief to which Headley is entitled under any law that this Court considers fair and proper.

## VII.  **JURY TRIAL REQUEST**

Under Fed. R. Civ. P. 38 (a) (b) (c) and all applicable laws providing for the right to trial by jury,  Dr. Headley requests a jury trial of all claims and issues.

Date: September 14,  2025.

Respectfully submitted,

*/s/ Steven L. Murray*

_____
Steven L. Murray
Murray Law, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (303) 396-9952
Email: steven@smurraylaw.com

Plaintiff's Address:

3091 Mill Vista Road, # 1120
Highlands Ranch, CO 80129